# JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN ADVISORS GROUP,<br><br>Defendant. | CASE NO.: 8:21-cv-01674 JLS (JDEx)<br><br>**STIPULATED FINAL JUDGMENT AND ORDER** |

The Consumer Financial Protection Bureau (Bureau) commenced a civil action against American Advisors Group (AAG) on October 8, 2021, to obtain injunctive and monetary relief and a civil money penalty. The Complaint alleges violations of § 1036(a)(1)(B) of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. § 5536(a)(1)(B), and violation of the 2016 administrative order that the Bureau entered against AAG, in connection with AAG's reverse-mortgage product.

The Bureau and AAG agree to the Court's entry of this Stipulated Final Judgment and Order (Order), without adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint.

# FINDINGS

1. This Court has jurisdiction over the parties and the subject matter of this action.

2. Defendant neither admits nor denies the allegations in the Complaint, except as specified in this Order. For purposes of this Order, Defendant admits the facts necessary to establish the Court's jurisdiction over it and the subject matter of this action.

3. Defendant waives all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each Party agrees to bear its own costs and expenses, including, without limitation, attorney's fees.

4. Entry of this Order is in the public interest.

# DEFINITIONS

5. The following definitions apply to this Order:

   a. "**Advertising Compliance Official**" means an individual designated by Defendant as the person responsible for performing the tasks and duties required under Paragraph 8. The Advertising Compliance Official must be a director or senior-level executive (e.g., president, chief executive officer, chief financial officer, chief operating officer, chief information officer, senior vice president, or managing member) of Defendant, or an individual who reports directly to the president, chief executive officer, managing member, or board of directors of Defendant.

   b. "**Affected Consumers**" means consumers who received mailers from AAG with estimated home values, paid fees associated with a reverse-mortgage application, obtained an appraisal with a property value that was lower than the estimated home value on the mailer, and did not ultimately contract with AAG for a reverse mortgage.

   c. "**Assist Others**" includes but is not limited to:
      i. consulting in any form whatsoever;
      ii. providing paralegal or administrative support services;
      iii. performing customer-service functions, including but not limited to receiving or responding to consumer complaints;
      iv. formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including but not limited to any telephone-sales script, direct-mail solicitation, or the text of any Internet website, email, or other electronic communication or advertisement;

      v. formulating or providing, or arranging for the formulation or provision of, any marketing-support material or service, including but not limited to web or Internet Protocol addresses or domain-name registration for any Internet websites, affiliate marketing services, or media-placement services;

      vi. providing names of, or assisting in the generation of, potential customers;

      vii. performing marketing, billing, or payment services of any kind; and

      viii. acting or serving as an owner, officer, director, manager, or principal of any entity.

d. "**Consumer Financial Product or Service**" is synonymous in meaning with and equal in scope to the definition of the term in the CFPA, 12 U.S.C. § 5481(5), and, subject to applicable restrictions contained in the CFPA, includes but is not limited to "extending credit and servicing loans, including acquiring, purchasing, selling, brokering, or other extensions of credit." 12 U.S.C. § 5481(15)(A)(i).

e. "**Defendant**" means American Advisors Group, and all its successors and assigns.

f. "**Effective Date**" means the date on which the Order is entered on the docket.

g. "**Enforcement Director**" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his or her delegate.

h. "**Regional Director**" means the Regional Director for the West Region for the Office of Supervision for the Consumer Financial Protection Bureau, or his or her delegate.

i. **"Related Consumer Action"** means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Defendant based on substantially the same facts as described in the Complaint.

C(  *Joseph [signature]*

1.

# Prohibitions

**IT IS ORDERED** that:

6. Defendant and its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who have actual notice of this Order, whether acting directly or indirectly, may not:

 a. violate §§ 1031 or 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531, 5536(a)(1)(B); and

 b. in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any Consumer Financial Product or Service, may not misrepresent, or Assist Others in misrepresenting, expressly or impliedly, any fact material to consumers, including but not limited to estimated home values to consumers.

7. All executive officers, marketing, and compliance personnel must attend mandatory training that covers the legal requirements related to mortgage advertising.

4

## II.

## Advertising Review

**IT IS FURTHER ORDERED** that:

8. Within 90 days of the Effective Date, Defendant's Advertising Compliance Official must ensure that AAG provides a URL link to the CFPB's *Reverse Mortgage: A Discussion Guide* on all direct-mail solicitations sent to prospective borrowers. Defendant's Advertising Compliance Official must also ensure that a URL link to the CFPB's Guide, *You have a reverse mortgage: Know your rights and responsibilities,* is provided in a welcome communication to borrowers with newly originated reverse-mortgage loans.

## III.

## Compliance Plan

**IT IS FURTHER ORDERED** that:

9. Within 60 days of the Effective Date, Defendant must submit to the Enforcement Director for review and determination of non-objection a comprehensive compliance plan designed to ensure that Defendant's advertising of reverse-mortgage credit products complies with the terms of this Order (Compliance Plan). The Compliance Plan must include, at a minimum:

    a. Detailed steps for addressing each action required by this Order;

    b. A comprehensive advertising compliance policy and procedure for evaluating all advertisements for compliance with the CFPA before publication. The policy must at a minimum include:

        i. A process for the Advertising Compliance Official to review each advertisement for compliance with the CFPA before publication;

      ii. A requirement that each review is documented by the Advertising Compliance Official, including when the review occurred and who conducted the review;

      iii. A requirement that the Advertising Compliance Official reviews scripts for all telemarking calls conducted by the Defendant and its officers, agents, servants, employees, and all other persons in active concert, or participation with them; and

      iv. A process for the Advertising Compliance Official to review all existing advertisements currently in circulation for compliance with the CFPA;

c. An explanation of Defendant's consumer-compliance organizational and reporting structure;

d. Written descriptions of the job duties of all employees with duties under the advertising-compliance policy. The written description shall include the persons over whom each employee has authority and to whom each employee reports;

e. A requirement that Defendant allocate resources to compliance that are commensurate with Defendant's size, complexity, and business operations to ensure that Defendant implements adequate compliance programs including appropriate staffing levels with qualified and experienced personnel;

f. A requirement that Defendant provides mandatory ongoing education and training in Federal consumer financial laws (as defined by 12 U.S.C. § 5481(14)) and the prohibitions and requirements of this Order for all affected officers, agents, servants, employees, and attorneys; the training must be appropriate for each individual's responsibilities and duties; training activities must be

        documented and the training programs reviewed and updated at least annually to ensure that appropriate personnel are provided with the most relevant and pertinent information; and all new employees of Defendant or Defendant's agents in the affected roles must complete this training before communicating with any consumer about a reverse-mortgage credit product;

    g. A requirement that the Compliance Plan be updated at least every two years, or as required by changes in laws or regulations, so that the Compliance Plan remains current and effective;

    h. A plan requiring timely and appropriate corrective action to remedy any material non-compliance with the Compliance Plan; and

    i. Specific timeframes and deadlines for implementation of the steps described above.

10. The Enforcement Director will have the discretion to make a determination of non-objection to the Compliance Plan or direct Defendant to revise it. If the Enforcement Director directs Defendant to revise the Compliance Plan, Defendant must make the revisions and resubmit the Compliance Plan to the Enforcement Director within 30 days.

11. After receiving notification that the Enforcement Director has made a determination of non-objection to the Compliance Plan, Defendant must implement and adhere to the steps, recommendations, deadlines, and timeframes outline in the Compliance Plan.

# MONETARY PROVISIONS

## IV.

### Order to Pay Redress

**IT IS FURTHER ORDERED** that:

12. Within 10 days of the Effective Date, Defendant must reserve or deposit into a segregated deposit account $173,400 for the purpose of providing redress to Affected Consumers as required by this Section.

13. Within 60 days of the Effective Date, Defendant must submit to the Enforcement Director for review and non-objection a comprehensive written plan for providing redress consistent with this Order (Redress Plan). The Enforcement Director will have the discretion to make a determination of non-objection to the Redress Plan or direct Defendant to revise it. If the Enforcement Director directs Defendant to revise the Redress Plan, Defendant must revise and resubmit the Redress Plan to the Enforcement Director within 30 days. After receiving notification that the Enforcement Director has made a determination of non-objection to the Redress Plan, Defendant must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Redress Plan.

14. The Redress Plan must include the process for providing redress totaling $173,400 to Affected Consumers by mailing a certified or bank check.

15. The Redress Plan must include: (1) the form of the letter (Redress Notification Letter) to be sent notifying Affected Consumers of the redress; and (2) the form of the envelope that will contain the Redress Notification Letter. The letter must include language explaining how the amount of redress was calculated and a statement that the provision of redress payment complies with the terms of this Order. Defendant may not include in any envelope containing a Redress Notification Letter any materials other than the approved letters and redress checks.

16. Defendant must send such redress to the Affected Consumers by United States Postal Service first-class mail, address-correction service requested, to the Affected Consumer's most recent address as maintained in Defendant's records.

    a. For any Affected Consumer whose redress payment is returned or whose check is not cashed in 90 days, Defendant must make reasonable attempts to obtain a current address using standard address-search methodologies, including a standard address search using the National Change of Address system and to promptly re-mail all returned redress checks to current addresses, if any; and

    b. If the check for any Affected Consumer is returned to Defendant or if the check is not cashed within 90 days after a second mailing, and if a current mailing address cannot be identified using standard address methodologies, Defendant must retain the Redress Amount for that Affected Consumer for a period of three-hundred sixty (360) days from the date the redress check was originally mailed, or a shorter period if required by law, during which period such amount may be claimed by such Affected Consumer upon appropriate proof of identity and, after such time, dispose of these monies in accordance with this Paragraph 17.

17. After completing the Redress Plan, if the amount of redress provided to Affected Consumers is less than $173,400, within 30 days of the completion of the Redress Plan, Defendant must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, the difference between the amount of redress provided to Affected Consumers and $173,400.

18. The Bureau may use these remaining funds to pay additional redress to Affected Consumers. If the Bureau determines, in its sole discretion, that additional redress is wholly or partially impracticable or otherwise inappropriate, or if funds remain after the additional redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury. Defendant will have no right to challenge any actions that the Bureau or its representatives may take under this Section.

19. Defendant may not condition the payment of any redress to any Affected Consumer under this Order on that Affected Consumer waiving any right.

## V.

## Order to Pay Civil Money Penalty

**IT IS FURTHER ORDERED** that:

20. Under § 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint and continuing until the Effective Date, and taking into account the factors in 12 U.S.C. § 5565(c)(3), Defendant must pay a civil money penalty of $1,100,000 to the Bureau.

21. Within 10 days of the Effective Date, Defendant must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

22. The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by § 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

23. Defendant, for all purposes, must treat the civil money penalty paid under this Order as a penalty paid to the government. Regardless of how the Bureau ultimately uses those funds, Defendant may not:

    a. Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

    b. Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

## VI.
## Additional Monetary Provisions

**IT IS FURTHER ORDERED** that:

24. In the event of any default on Defendant's obligations to make payment under this Order, interest computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

25. Defendant must relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law and no part of the funds may be returned to Defendant.

26. Under 31 U.S.C. § 7701, Defendant, unless it already has done so, must furnish to the Bureau its taxpayer-identification numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

27. Within 30 days of the entry of a final judgment, order, or settlement in a Related Consumer Action, Defendant must notify the Bureau of the final judgment, order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendant paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid.

# COMPLIANCE PROVISIONS

## VII.

### Reporting Requirements

**IT IS FURTHER ORDERED** that:

28. Defendant must notify the Bureau of any development that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Defendant; or a change in Defendant's name or address. Defendant must provide this notice, if practicable, at least 30 days before the development, but in any case no later than 14 days after the development.

29. Within 7 days of the Effective Date, Defendant must:
    a. Designate at least one telephone number and email, physical, and postal addresses as points of contact that the Bureau may use to communicate with Defendant;
    b. Identify all businesses for which Defendant is the majority owner, or that Defendant directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; and
    c. Describe the activities of each such business, including the products and services offered and the means of advertising, marketing, and sales.

30. Defendant must report any change in the information required to be submitted under Paragraph 29 at least 30 days before the change or as soon as practicable after learning about the change, whichever is sooner.

31. Within 90 days of the Effective Date, and again every year for five years after the Effective Date, Defendant must submit to the Regional Director an accurate written compliance progress report (Compliance Report), sworn to under penalty of perjury, which, at a minimum:

    a. Lists each applicable paragraph and subparagraph of the Order and describes in detail the manner and form in which Defendant has complied with each such paragraph and subparagraph of the Order;

    b. Describes in detail the manner and form in which Defendant has complied with the Compliance Plan and Redress Plan; and

    c. Attaches a copy of each Order Acknowledgment obtained under Section VIII, unless previously submitted to the Bureau.

## VIII.
## Order Distribution and Acknowledgement

**IT IS FURTHER ORDERED** that:

32. Within 7 days of the Effective Date, Defendant must submit to the Regional Director an acknowledgment of receipt of this Order, sworn under penalty of perjury.

33. Within 30 days of the Effective Date, Defendant must deliver a copy of this Order to each of its board members and executive officers as well as to any managers, employees, service providers, or other agents and representatives who have responsibilities related to the subject matter of the Order.

34. For 5 years from the Effective Date, Defendant must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section VII, any future board members and executive officers, as well as to any managers, employees, service providers, or other agents and representatives

who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

35. Defendant must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq.*, within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

36. Within 90 days of the Effective Date, Defendant must provide the Regional Director with a list of all persons and their titles to whom this Order was delivered through that date under Paragraphs 33-34 and a copy of all signed and dated statements acknowledging receipt of this Order under Paragraph 35.

## IX.
## Recordkeeping

**IT IS FURTHER ORDERED** that:

37. For five years from the Effective Date, Defendant must create and retain the following business records:

    a. All documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau.

    b. All documents and records pertaining to the Redress Plan, described in Section IV above.

    c. Copies of all sales scripts; training materials; advertisement; websites; and other marketing materials, including any such materials used by a third party on Defendant's behalf.

38. Defendant must make documents identified in Paragraph 37 available to the Bureau upon the Bureau's request.

# X.
# Notices

**IT IS FURTHER ORDERED** that:

39. Unless otherwise directed in writing by the Bureau, Defendant must provide all submissions, requests, communications, or other documents related to this Order in writing, with the subject line, "*CFPB v. American Advisors Group*, Central District of California Case No. 8:21-cv-01674 JLS (JDEx)," and send them by overnight courier or first-class mail to the below addresses:

>Assistant Director for Enforcement
>Consumer Financial Protection Bureau
>ATTENTION: Office of Enforcement
>1700 G Street, N.W.
>Washington, D.C. 20552
>        and
>Regional Director for the West Region
>Consumer Financial Protection Bureau
>301 Howard Street, Suite 1200
>San Francisco, CA 94105

and contemporaneously by email to:

>Enforcement_Compliance@cfpb.gov

# XI.
# Compliance Monitoring

**IT IS FURTHER ORDERED** that:

40. Within 14 days of receipt of a written request from the Bureau, Defendant must submit additional Compliance Reports or other requested

information, which must be made under penalty of perjury; provide sworn testimony; or produce documents.

41.   Defendant must permit Bureau representatives to interview any employee or other person affiliated with Defendant who has agreed to such an interview regarding: (a) this matter; (b) anything related to or associated with the conduct described in the Complaint; and (c) compliance with this Order. The person interviewed may have counsel present.

42.   Nothing in this Order will limit the Bureau's lawful use of compulsory process, under 12 C.F.R. § 1080.6.

43.   For five years from the Effective Date, should Defendant seek to transfer or assign all or part of its operations that are subject to this Order, Defendant must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Order.

## XII.
## Release and Termination

44.   The Bureau releases and discharges Defendant from all potential liability for violations of law that the Bureau has or might have asserted based on the practices described in the Complaint, to the extent such conduct occurred before the Effective Date and the Bureau knows about it as of the Effective Date. The Bureau may use the practices described in the Complaint in future enforcement actions against Defendant and its affiliates, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty.  This release does not preclude or affect any right of the Bureau to determine and ensure compliance with this Order, or to seek penalties for any violation of this Order.

# XIII.
# Retention of Jurisdiction

**IT IS FURTHER ORDERED** that:

45. The Court will retain jurisdiction over this matter for the purpose of enforcing this Order.

**IT IS SO ORDERED.**

DATED: October 25, 2021

_____
HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE

17